Douglas A. BERGFELD, Appellant,

v.

STATE of Indiana, Appellee.

No. 183S29.

Supreme Court of Indiana.

Dec. 28, 1984.

Rehearing Denied Feb. 20, 1985.

William C. Erbecker, Jack Sutherland, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Douglas A. Bergfeld was convicted of murder and sentenced to a term of sixty years imprisonment. The sole question presented for review in this direct appeal is whether the verdict of the jury and the sentence of the trial court is sustained by sufficient evidence.

The facts brought out by the testimony and exhibits at trial show that at approximately 7:00 p.m. during the evening of March 18, 1980, Defendant appeared at the house of Valerie and Timothy Preseau. Defendant was a friend of the Preseaus and also of Sue Anne Gibson who lived with the Preseaus. Shortly thereafter, Defendant left to go to the home of Jerry Blackford. While at Blackford's home, Defendant showed Blackford a gun that Defendant had in the glove compartment of his car and told Blackford he had "ripped off" his former boss' office and obtained the gun. There was testimony that approximately two weeks earlier, Defendant had talked about a gun that was in his former boss' place and stated that he might be breaking in there. He also said he needed money. William Long, Defendant's former boss, testified that Defendant worked for him from November, 1979, to January, 1980, when he was fired. Long owned a .32 caliber Rossi revolver and had not seen the gun since the middle of March when his office was burglarized. The record established that Long's office was burglarized sometime between 5:00 p.m. on March 18 and 6:00 a.m. on March 19 and that Long's Rossi revolver plus a small

amount of money were missing. The gun had a wooden handle and chrome barrel, was loaded with five live rounds and contained the serial number C204151.

The evidence further showed that Defendant returned to the Preseau residence at approximately 9:30 p.m. and remained there until approximately 11:00–11:30 p.m. when Timothy Preseau accompanied Defendant to a liquor store. When they arrived at the store, Defendant stated he could not go right in because he had a "piece." He then reached under the seat of the truck, pulled out a gun and showed it to Timothy Preseau. Preseau described the gun as either a .32 or .38 caliber, silver colored, nickel plated, 6-shot revolver. He also noticed that the gun's serial number started with a C. Defendant handed the weapon to Preseau to place in the glove compartment. After purchasing liquor, the two returned to the Preseau residence.

At approximately midnight, the Preseaus went to bed but Defendant and Sue Ann Gibson stayed up and played cards. At approximately 2:00 a.m., Defendant left the Preseau residence without telling Gibson where he was going. Defendant was seen later at Paul Park's Country Lounge, a bar located on Pendleton Pike in Indianapolis. The bartender testified that the night of March 18–19 was an unusually slow night for the bar and that she distinctly remembered serving Defendant. She recalled that after "last round call," Defendant pushed five or six quarters across the table to her and stated something to the effect that he might as well go home broke. Defendant was the last customer to leave when the bar closed at approximately 3:00 a.m.

Witness Richard Drinkut testified that he pulled into the parking lot of Super Seven Store at 21st and Mitthoeffer Road in Indianapolis at approximately 3:20 a.m. on March 19. He said the parking lot was clearly lit. Drinkut observed a man and a woman arguing inside a truck. He stated they appeared to him to be arguing because the man was grabbing and shaking the woman. Drinkut was not able to abso-

lutely identify Defendant as one of the occupants of the truck, however, he said it could have been him. He did describe the man as clean shaven, between the ages of twenty and twenty-five, and with medium length brownish-blonde hair. He described the woman in the truck as wearing a rust colored coat and having shoulder length brown hair cut in a shag haircut. This description fit that of Janet Portman, the clerk of the Super Seven store. Drinkut also was able to give a very precise, detailed description of Defendant's truck since it was a very unique vehicle. Drinkut described the vehicle as a 1958 or 1959 brown Ford truck with a homemade stock bed and side rails made of two-by-fours or two-by-sixes that extended approximately two feet above the truck bed. All of the corners of the side rail boards had been rounded off and shellacked or varnished. The vehicle also had white spoke wheels, double headlights, two lights in back of the truck, large tail lights about two feet apart, no license plate light and no tail gate. Drinkut positively identified Defendant's vehicle from State's exhibits 12 and 19 as the truck he saw in the parking lot with the two occupants. He stated he particularly observed this vehicle because he has an affection for old trucks stemming from his father who had owned several old trucks over the years. Drinkut testified that he went into the store and found no one there, not even a clerk. He saw the truck again after he left the store when he was at 21st and German Church Road. He came up behind the vehicle and said it weaved from side to side as it was traveling along German Church Road.

Charles R. Watson, a special deputy sheriff in Marion County, testified that at 3:05 a.m. on April 19, 1980, he saw a truck travelling south at 2600 German Church Road. At approximately 3:30 a.m., he saw Janet Portman in the door of the Super Seven Market as he normally checked to see if she was o.k. when passing that spot on his rounds. He also had seen, at about 3:13 a.m., the truck at the intersection of 21st and Mitthoefer near the east end of the Super Seven Market where Portman worked. Watson examined Defendant's truck and identified it as the same vehicle he saw on April 19 on German Church Road and at the Super Seven Market. By 3:30 a.m., the Sheriff's office had been notified that there was no one at the Super Seven Market and Watson was dispatched to the store. Watson's check at Super Seven revealed there was no clerk on duty although he found an unidentified man at the door of the store. He recalled that when he saw Janet Portman at 3:13, her vehicle, the pick-up truck and another vehicle were in the lot at Super Seven. Jennifer Hunt, the store manager of Super Seven, was called in to determine if anything was missing. After taking register readings and attempting to balance the drawer, she determined that $68.23 was missing.

Defendant's truck was spotted later by Jeannette Banks between 30th and 38th Streets weaving in and out of traffic as if the two people in the vehicle were pushing each other back and forth. When she approached nearer to the vehicle, she could no longer see the passenger in the truck and noticed that the driver was bent over as if looking for something. It was her thought at the time that the two people were intoxicated and arguing. The truck made a right turn onto Pendleton Pike and Mrs. Banks went directly to her work place one-half block away. She checked in for work at 3:38 a.m. At approximately 6:00 a.m., Defendant returned to the Preseau residence. Mary McClure, another resident at the Preseau's, testified that when Defendant arrived, he talked about drinking at a bar and killing someone. He also took a gun out of his boot and asked if he could hide the gun in the house. Later, Sue Anne Gibson and a four-year-old child, Tommy Preseau, accompanied Defendant to a Waffle House where he paid for breakfast. Defendant also paid for a bottle of liquor they purchased on the way home. When they arrived back at the house, they washed Defendant's truck.

Janet Portman's body was discovered in a field near the intersection of State Road 238 and Interstate 69 in Hamilton County.

She had died as a result of five .32 caliber gunshot wounds to the head, neck and back. There was expert testimony that the markings on the bullets removed from the victim's body were consistent with the markings found on bullets fired from a .32 caliber Rossi. A Camel filter cigarette found beneath her body appeared to have been placed there shortly before the body was abandoned. Witnesses testified that Defendant usually smoked Camel filter cigarettes. Defendant was arrested and charged with the murder of Janet Portman. While he was being booked, Police Officer Richard Garcia found that Defendant had $25.43 in cash in his pockets. After Defendant was taken into custody, his clothes were taken from him one article at a time. They were bagged, labeled, and forwarded to a lab for testing and examination. Expert testimony at the trial concluded that a hair sample taken from State's exhibit 31, Defendant's shirt, matched a hair strand taken from victim's body.

At trial, Defendant admitted he had taken his boss's gun and stated he did so because he was mad at his former boss. He also stated he returned to the Preseau residence at about 4:00 a.m. on March 19, 1980, but did not want to wake the children there residing so he remained in the truck until 6:00 a.m. when he became cold and decided to go into the house. He denied telling Mary McClure or anyone else that he had killed someone. Defendant's testimony contradicted the testimony he had given to police officers earlier. State Police Officer Ronald Bruce testified that Defendant told him on March 19, 1980, that he spent the night of March 18–19 with a girlfriend except that he was at Paul Park's Lounge between 2:00 a.m. and 3:30 a.m. State Police Investigator David Laedis testified that Defendant told him that he left Paul Park's Lounge at 3:30 a.m. and arrived back at the Preseau residence at 4:00 a.m. where he talked to Gibson who was still up. He also told the investigator that he never had a gun and that he does not loan his truck.

■ Defendant claims the above facts fail to provide sufficient probative evidence from which the jury could reasonably determine beyond a reasonable doubt that he murdered Janet Portman. When considering a claim of insufficient evidence, this Court will not reweigh the evidence nor judge the credibility of witnesses but will look to that evidence most favorable to the State with all reasonable inferences to be drawn therefrom. If we find that there is substantial evidence of probative value from which the trier of fact could reasonably infer a defendant's guilt beyond a reasonable doubt, we will affirm the conviction. *Smith v. State*, (1984) Ind., 465 N.E.2d 1105, *reh. denied.* Defendant now points to the fact that no one absolutely identified him at the Super Seven Market or in the company of Janet Portman at any time during the 18th and 19th of March, 1980. He discounts the testimony that the bullets which killed Portman were consistent with those fired through a .32 caliber Rossi because an expert testified that there were approximately ten other makes of pistols from which the shots could have been fired. There also was testimony that dirt samples taken from the interior of Defendant's truck did not match dirt samples taken from the location where the victim's body was discovered nor were any of Janet Portman's fingerprints found in the vehicle. He also attempts to show that the times given by the various witnesses are not consistent.

■ Although it is true that there were inconsistencies in some of the testimony from all of the witnesses, it nevertheless is also true that there was more than adequate probative evidence before the jury to arrive at the conclusion it did. The peculiar customized features of Defendant's pick-up truck were absolutely identified by witnesses in a time frame consistent with Portman's robbery, removal from the store, and subsequent murder. Defendant returned to the Preseau home at approximately 6:00 a.m. and exhibited a pistol to Mary McClure. He told her he had to hide the gun in the house because he had been out drinking and that he had shot someone.

Witness Drinkut saw one who met the description of Defendant in Defendant's vehicle at the Super Seven parking lot and also described the victim as the other occupant of the vehicle. In view of all of the evidence before the jury, there was sufficient probative evidence from which that jury could reasonably infer beyond a reasonable doubt that Defendant did, in fact, murder Janet Portman.

Finding no error, we affirm the trial court in all things.

GIVAN, C.J.; and DeBRULER, HUNTER and PRENTICE, JJ., concur.